is Public Interest Legal Foundation v. Steve Simon, et al. Ms. Phillips? May it please the Court, good morning. My name is Kaylin Phillips for Appellant Public Interest Legal Foundation. Voting rights should not be granted or removed in secret. With the National Voter Registration Act, Congress decided that decisions about who is and who is not eligible to vote must be publicly available and transparent. Minnesota, for its part, removes hundreds of thousands of registrants from the rolls every year. Yet those hundreds of thousands of decisions on voting rights can be made in the dark. That is because Minnesota is exempt from the transparency protections of the National Voter Registration Act. And because the Minnesota Legislature won't change the Data Practices Act. Yes, Your Honor. Under Minnesota law, only Minnesota registered voters. Statutory law? Yes, correct. So Minnesota has its power to end what you're calling an exemption? As to the voter roll, yes. Yes, they could make the voter roll available to the public. This is only a public disclosure case? That's correct. So you want this case to somehow invalidate the entire act? Not the entire act, only the transparency protections of the act. And the transparency protections extend beyond the voter roll. They would also encompass records related to list maintenance. So those would also be publicly available. But the protections, but it would be a burden to the State in this case, right? It would be an additional regulatory burden to the State. In this case, Minnesota does have preferential treatment. Well, that's not, that wasn't my question, right? It would impose an additional regulatory requirement on the State of Minnesota. It would pull Minnesota under the NVRA to which many states, 44 states across the Union. I think that's a yes. Yes. Thank you. That's a yes. That's a yes. However, when the harm is, there's an unconstitutional balance. The remedy is leveling the balance. I'm still on what, what can't the Minnesota Legislature cure of what you're complaining about? You said, well, yeah, that's the voter roll, but, well, okay, what, what, what in the, is it, what besides the Data Processing Act caused the, the, your request for disclosure to be denied? Our request is made under federal law, under the National Voter Registration Act. Yeah, I know all that, but this is, this is, I mean, we're talking about equal sovereignty and Minnesota has the ability to achieve the equality or not achieve the equality you're talking about by a simple majority of the State Legislature doing what the current Secretary of State is obligated to, not to do. What does, what can't be cured by a single, by a Minnesota statute? Well, the transparency protections of the National Voter Registration Act are broader than just access to the voter roll. Can't you answer the question? Well, how are they, how are they broader in a way that the Minnesota Legislature couldn't, couldn't mandate the transparency you want? Congress decided that despite the existence of state laws on transparency... You're not going to answer the question, are you? I'm sorry, I don't understand exactly... What can't Minnesota cure? What, what, what, what in this equal sovereignty notion, what can't Minnesota cure by a simple statute of the transparency you want? The transparency would need to be equal to that that federal law requires. Congress decided the transparency was so important... Well, why can't Minnesota do that? Basically take itself out of the exceptions? It could. It hasn't. Well, all right. So that's the answer. Yes, I'm right. Minnesota could cure this by, simply by statute. It wouldn't take a referendum, wouldn't take a constitutional amendment. The Minnesota Legislature could instruct the Secretary of State to do in the future what you want. It could. And if Minnesota removed election day registration, it would be subject to the entirety of the NVRA automatically without any further action needed by the state. Any injury to Minnesota's sovereignty, right, is easily redressable by the state of Minnesota here, right? Or if, if, if we're really concerned about equal state sovereignty, Minnesota can make itself equal by simply enacting a statute. I suppose that it could, but the question before the Court is something courts have done... Because, I mean, the state sovereignty, to the extent, it's not a doctrine I've spent a lot of time with it, before the last couple of weeks at least, but seems to be concerned with the state's sovereigns and the state's being disadvantaged by Congress. And I don't see anything resembling that in your case. Now, maybe I'm mistaking, mistaken about that. But to Judge Loken's point, to the extent the state feels like it's disadvantaged, it can remedy that. The injury here is the foundation's injury. We're raising our own. So it's not all about state sovereignty. That would get to standing, which is my, actually my premier problem with your position. But this is a fundamental problem. You want to pose a question that has, that doesn't need to be answered. I disagree. You want us, you want us to say this transparency, as it, lack of transparency, as it exists under Minnesota law now, has to be preempted by a federal statute, which, which authorized it in the first place. We don't have to do that. If Minnesota law does not, if Minnesota law, the state of Minnesota exercising its equal sovereignty, has the ability to provide the transparency that now the Secretary of State can't provide, there's no reason the federal law should preempt that. But they haven't. That's exactly state, no they haven't, because states can be different. States can be different, but Congress cannot treat states differently without justification. And that's why we're here. Because Congress made a choice. Is that an argument that this, that this, this provision was unconstitutional when it was written? Yes and no. Because the analysis that the Shelby County Court used was to look at current conditions. And so the analysis. I don't care about Shelby County. I'm, I'm talking, just looking at this from a standpoint of, of preemption and federal state relations and state sovereignty and the, as it is reflected in the Constitution. You're just making this up, frankly, as I see it. Respectfully, I disagree. The, the principles of equal state sovereignty are built into the bedrock of our Constitution, of our Federalist system. Except, except for all the Article I exceptions. Well, there, it is true that. Let's talk about the harm. I mean, where is the harm under the state sovereignty? I'm sorry, Judge, can I. Go on. Where the, the harm. I mean, for example, if the state of Iowa is subject to these disclosure provisions and it feels that it's being treated unequally, I get that. Right? That's, that I think shows a potential harm. But you're not representing any of the other states' interests here, as I understand it. No, that's correct. We're representing our own interests. And our injury stems from the unconstitutional design of the NVRA. So this is where you're invoking bond, right? Correct. Yes. Okay. Yes. May I ask one more question? I hate to derail you again, but if, if a Minnesota voter filed the same request that you did, citing Minnesota law, is there a difference in the materials that she would receive as opposed to what you would receive under a request under federal law? Right? In other words, is the disclosure under state law narrower than it is under federal law? It's, it could be. It could be. But in this instance, no. We asked for the same information that the state does give to registered voters. So if you had a registered voter just join your request, would that have resolved this problem? It wouldn't because federal rights don't exist by proxy. We don't need to associate with somebody else to, to surmount a problem. Practically speaking, you'd get what you were looking for, right? Yes, but again, it... It may not matter. I take your argument, but... The voter roll is an ever-evolving document. It's something that you might receive it one day and the next day it's different. So it's something that you might, our organization would continuously be asking for. And that burden of associating with a registered voter does not solve the unconstitutional structure here where Minnesota is exempt without justification. So Bond though had a liberty interest, right? That's correct. You don't. That's correct. How does Bond apply then? Help, help me reason through that. Yes. So in Bond, the government argued that states, not individuals, must raise the federalism arguments and the court rejected that argument. It said that fidelity to principles of federalism is not for the states alone to vindicate. But it's for people with a liberty interest in that case to vindicate. And you, you don't have that interest. Those are the specific facts of Bond, but the analysis in Bond applies here and the other courts have... Isn't the liberty interest an essential component of Bond? I don't think so. I think the essential component is that when an individual suffers an injury in FACTS, when an individual has Article III standing, she may object that her injury results from the disregard of the federal structure of the government. What case accepts your interpretation of that? Well, I, this, this circuit has, in Carson v. Simon, has extended the Bond case to different circumstances. That was Article II, it's a different circumstance than here, but it was not narrowly limited. What do you think Bond meant when it said an individual, quote, in a proper case, end quote, can assert injury from governmental action? What's the proper case and what's an improper case under Bond? The proper case is one... Is yours. Yes, it's ours. What's the improper case? When there's not a federalism issue at play, when there's some other causation outside of a violation of... But Bond itself talks about any proper case, an action taken in excess of the authority that federalism defines. Federalism's built into that analysis. Right. There's got to be a line that doesn't involve when federalism isn't involved, because there's a carve-out here, in a proper case. Right. There will be cases where it's not proper. Here it is proper. Here it's the similar argument where we're raising a violation of the Tenth Amendment that has affected the foundation. The foundation has Article III standing due to the denial of public records and the state is exempt from the NVRA due to the disregard of our federalist structure. Back to what's the actual harm, now that we referenced that? The harm to the foundation is that it's been denied public records. I see that my time... A lot of people would like a public record. There has to be tangible. There has to be standing harm. Correct. The district court said that we did have Article III standing because we asked for the records. We've been denied the records. So your best case for that proposition is Adkins and public... Public Citizen and also Adkins. Okay. I see my time is running up. I'd like to reserve for rebuttal. Thank you. Is Mr. Hartshorn next? Yes, Your Honor. Good morning, Your Honors. My name is Nathan Hartshorn. I'm an Assistant Attorney General for the State of Minnesota and I'm here representing Appalachee Steve Simon. I wanted first to jump on the issue that was involved in the Court's colloquies with Ms. Phillips, specifically with regard to Minnesota law, what the Minnesota legislature has done and can do to address the informational interests that the appellants assert. Your Honor is absolutely correct that the legislature can give, could pass legislation to give PILF everything that they're looking for. I think it's worth noting from Ms. Phillips' statement here at the podium that the voter rolls that Minnesota makes available, it's called the public information list, to every registered Minnesota voter, Ms. Phillips has said that that would give them everything they want. I hadn't heard that before, but that's a notable concession in this case because it means that all PILF needs to do is find a Minnesota registered voter, I would expect their local council in this case almost certainly qualifies, and pay a nominal fee, I think it's $42, and have that council or that representative sign a statement saying that the information they get is only going to be used for political and election-related purposes, so for example, not for telemarketing. Would that include litigation? I mean, I think the Secretary's understanding of that statute, which is MnSTAT 201.091, would include election-related litigation or politically-related litigation as a business  It's designed to prohibit the commercial use and misuse of those records. That's the general idea. I think it also prohibits, let's say, stalking use of the information, but yes. But it certainly is our understanding that PILFs, and I'm not talking about organizational intentions, I mean, what they exist for is entirely within the politics and elections realm, so it doesn't seem to me that they would have difficulty doing that. So what I understand Ms. Phillips to be saying is that this lawsuit is over PILF's desire not to have to find a representative in Minnesota, pay $42, and sign that statement, which that's less than I thought they were suing over. But with that out of the way, I wanted to get to the 11th Amendment and Ex Parte Young issue that we've briefed. In this case, PILF needs to show that either Congress abrogated Minnesota's 11th Amendment immunity or Ex Parte Young is available. To take the second part of that first, 10 months ago, this Court ruled in the AGA case that Ex Parte Young is not available. What's your position on standing? On standing. You want to jump to the hardest issue, which we don't have to reach. That's 11th Amendment? Yes. Okay. Sure. In my view, that's the hardest issue. I'm not going there if I don't have to, frankly. Okay. Then I'm happy to talk about standing. For Atkins and public citizen, why don't those apply here? The reason those don't apply here is what is explained by the Third Circuit in the PILF v. Commonwealth of Pennsylvania decision that we cited, and that is basically this same case filed in Pennsylvania rather than in Minnesota. And the Third Circuit held that PILF, based on these same claims of injury, and certainly in the context of Atkins and public citizen, but also TransUnion v. Ramirez, that the harms they are claiming are not relevant harms, concrete harms, within the statute under TransUnion's analysis. Atkins, the rights that were at stake were voting rights, which were the rights protected by the statute that was at issue there. Public citizen was about the right to participate in the judicial selection process, which was the right that that statute existed to protect. The alleged harms that PILF has cited here, and this is all explained in the Third Circuit case that we are trying to follow, the harms they have claimed are not the rights that the NVRA exists to protect. They are not the harms that the NVRA exists to prevent. They are not claiming that somebody was illegitimately purged from a voter roll. They aren't claiming that someone was denied the access to a particular voter registration form that the NVRA requires. Those are the kinds of rights the NVRA exists to protect. They are alleging that they want to do certain kinds of education. They want to do certain kinds of research. The NVRA is not an education or a research statute. It exists to protect voters and their voter registration rights. And if those were the kinds of harms they were claiming, if they had a good-faith basis to allege those kinds of harms, then they would have an argument under Article III. But under the Transunion precedent, which explains how informational injuries have to result in a downstream, a downstream substantive harm that's within the statute, these don't constitute Article III-worthy harms. And again, we would point the Court very effusively at the PILF versus Commonwealth of Pennsylvania decision from the Third Circuit, which we would submit is very persuasive precedent here. There is another element to standing, of course, which is prudential standing and is not addressed by the Third Circuit case. And that's the one that actually Bond, which there was a colloquy about, is most relevant to. And it's the notion that plaintiffs, like Ms. Bond, have the right to stand in the shoes of a state whose sovereign abilities have been trampled on by federal overregulation. The problem with PILF's use of Bond is kind of their problem with PILF's use of so many different things in this case. It's upside down and backwards. Bond is about federal overreach infringing on state sovereign territory. This is the opposite. This is, this is federal alleged underreach that allows the State of Minnesota to do too much. That's the claim that they're making. That's the opposite of Bond. That's Bond backwards. And so we don't, we don't believe that Bond has, has any relevance here. And the prudential standing problem that, that PILF has here is that they don't have any basis to stand in the shoes of any state that has had their, their sovereignty allegedly invaded. The entity that would have, that would have some kind of basis to say, hey, it's not fair the way this NDRA is, is structured would be the State of Maryland or the State of Illinois or Alaska when PILF sues them. And those states, in theory, I don't think this would be a good argument, but it at least would be geometrically understandable. Those states could say, hey, it's not fair the way the NDRA is structured to impact us, but not Minnesota and Wisconsin and so on. That, that invocation of, of standing would at least make some sense. Here, though, they're just turning Bond on its head, and so prudential standing is not, is not met. The other points I had, I had to make are all about the 11th Amendment stuff, but, okay, I, I take your point that it's, it's a tougher argument than, than, than the standing issues, but, but if, I mean, I have about two minutes, so I'll, I'll say it again. The, the synchronon, whether, whether we're talking about the 11th Amendment being abrogated by Congress or Congress under the AGA case and the Seminole Tribe case, Congress committing ex parte young actions, the synchronon in either one of those analyses is the intent of Congress. Under the Green v. Mansour decision, which we cited, the, it, it cites a longstanding rule which far predates that 1985 case. The idea there is that a state may not be sued in federal court unless it consents or unless Congress, quote, unequivocally expresses its intent to abrogate the immunity. Once again, this case is backwards from that. Congress has unequivocally expressed its intent not to abrogate Minnesota's immunity in this case. So, so there can't be an abrogation of Minnesota's 11th Amendment immunity because Congress's expressed intent. Is that, I'm wondering, is that taking the cart before the horse? Because you're kind of assuming you win on the merits and then saying you can't, and it may work. It just seems you, you've noted some oddities in the case and that strikes me as one as well. That is, I think the cart before the horse argument is part of how Pilka's responded to that. But I don't think it is a cart before the horse issue because the issue on the merits is whether, whether Shelby County limits the election clause authority of Congress. That's not what the 11th Amendment argument is about. The 11th Amendment, the, the ability of Congress to abrogate or not to abrogate Minnesota's sovereign immunity is separate from the Congress's election clause power. Congress gets to decide, as the Green case says, whether to abrogate or not. So even if this statute in general is, is an improper use of elections clause authority, it still remains the fact that Congress did not intend to abrogate Minnesota's immunity, and that creates an 11th Amendment problem. So my, my time is running down, so I'd say for these reasons, the Secretary requests that the Court affirm the District Court's order dismissing Pilka's complaint. Thank you. Thank you. Mr. Braniff. Andrew Braniff for the United States. Good morning, Your Honors. The, many of the arguments presented in our brief had already been presented up here today. We, you know, concur with the state that the District Court correctly dismissed Pilka's complaint here for a number of reasons. We raised and go over the prudential standing issues in our brief. One note, as to Your Honors' questions at the beginning, there are, in fact, two ways that the State of Minnesota could easily assert its own sovereignty here and permit these records to be released, and we encourage them to do so. They could change their data records request to allow out-of-state organizations like PILF to have them without necessitating an internal citizen to request them, or they could change their Election Day voting rules, and that would exempt them from the entirety of the NVRA, including the publication rules. I don't remember from your brief. Does the United States take a position on the 11th Amendment issue or not? We don't take a position on any of the Article III standing issues. We're a civil rights division. We're a plaintiff's firm ourselves. We encourage PILF and organizations like PILF to validate the voting rights of citizens around the country. We supported them in their recent suit against Maine, where they sued the State of Maine for voting records, much like this. In that case, Maine had asserted a state privacy statute interest to try to avoid producing those records, and we supported them in that effort. One of the comparisons to that case as to this case, Maine was one of the states that, subsequent to the passage of the NVRA, enacted Election Day voting rules, and so they, unlike Maine, took advantage of the exemption that occurred when the NVRA was initially enacted back in 1994. So were there to be a state that could possibly bring a Shelby County case alleging some type of sovereignty issue or equal sovereignty issue under the Shelby County Doctrine, it would be a state like Maine asserting its own rights, saying it's not fair that we continue to be subject to the NVRA's publication rules, while a state like Minnesota does not, even though we both have the exact same Election Day voting standard here. But in that case, Maine would be asserting their own rights. It would be their rights, their interests. The statute applies to state entities. State election officers have the responsibility to maintain and distribute these lists and keep their lists up to date, and so that's why we raised the prudential standing issues in our brief. Quickly with regard to the merits here, Shelby County, we don't believe, should apply to these Article I laws. As the judge already pointed out, there are four provisions in Article I, tariff, bankruptcy, port preference, and the naturalization clause that all explicitly require uniformity with regard to the laws that apply to the states. The election clause does not. If they wanted to have uniform laws amongst the states, they would not have written the election clause like they did, saying each state can make their own election laws, and then Congress can come in and alter those laws. If that's the way the system works, it specifically is allowing Congress to make state-specific laws. And so for that main reason alone, Shelby County shouldn't be expanded. The other arguments that are raised by appellants in this case, congruence and proportionality under Bernie also doesn't apply. That's a 14th Amendment case. This is Article I. No theory in that case passed the 14th Amendment. And for that reason, we feel that the district court correctly dismissed this case. Much of my time in opening was spent on whether Minnesota could cure the injury here. It was Congress that decided that transparency is so important that it exercised its power through the elections clause. The founder said that this power is to be used as the last resort to preserve the union. This is not a power that is used often. In fact, I only know of one circumstance when Congress has exercised its elections clause power and treated states unequally, and it did so here in the NVRA, where it put preferential treatment on certain states, burdening other states without justification, certainly not justification that meets current circumstances. Why do you think that was so? I mean, is there something in the record as to what Congress' rationale was? I don't know. I've read the legislative history. It's voluminous. There's not a lot of explanation as to why they did it. I would love to hear what Minnesota and the DOJ might say as a justification for exempting these states from the transparency protections. Certainly, transparency is needed in states with election day registration just as much as any other state, just as much as South Dakota, Iowa, all these other states. Transparency is important. So I don't know. But that is why this case needs to be remanded back down for an analysis as to whether the law is justified. The court said that there was no justification needed and simply ended the inquiry there. There needs to be some sort of justification for giving preferential treatment to Minnesota that then burdens the public by hindering their ability to have transparency in elections in this state. One quick point on standing. Minnesota wants you to follow the Third Circuit rather than binding Supreme Court precedent on denial of public records, which is public citizen in Eakins. Thank you very much. Thank you. Well, the case has been well briefed. The argument has been helpful. Issue is unusual and significant. So we will take it under advisement and do our best.